UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIFFANY KELLER, AMBER LANCASTER, BROOKE JOHNSON a/k/a BROOKE TAYLOR and CARRIE MINTER,<br><br>Plaintiffs,<br><br>- against -<br><br>CARM-LOR ENTERTAINMENT, INC. d/b/a MYSTIQUE BRIDGEPORT a/k/a MYSTIQUE and MYSTIQUE HOLDINGS STAMFORD, LLC d/b/a MYSTIQUE STAMFORD a/k/a MYSTIQUE,<br><br>Defendants. | CIVIL ACTION NO.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded)<br><br><br><br>MAY 28, 2025 |

**COMPLAINT**

Plaintiffs TIFFANY KELLER, AMBER LANCASTER, BROOKE JOHNSON a/k/a BROOKE TAYLOR and CARRIE MINTER, (collectively, "Plaintiffs"), file this Complaint against CARM-LOR ENTERTAINMENT, INC., d/b/a MYSTIQUE BRIDGEPORT a/k/a MYSTIQUE and MYSTIQUE HOLDINGS STAMFORD, LLC, d/b/a MYSTIQUE STAMFORD a/k/a MYSTIQUE (collectively, "Defendants") respectfully allege as follows:

**BACKGROUND**

1. This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip clubs, MYSTIQUE BRIDGEPORT a/k/a MYSTIQUE located at 2458 Main St, Bridgeport, Connecticut 06606, MYSTIQUE STAMFORD a/k/a MYSTIQUE located at 44 Popular St, Stamford, Connecticut 06907 (**collectively, hereinafter referred to as "Mystique" or, the "Strip clubs"**).

2. As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Right of Privacy:

1

Appropriation of Likeness; c) Right of Privacy: False Light; d) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat.§ 42-110b; e) Negligence and Respondeat Superior; f) Conversion; g) Unjust Enrichment; and h) Quantum Meruit.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant Carm-Lor Entertainment, Inc., is a corporation formed under the laws of the state of Connecticut, with its principal place of business located at 2458 Main Street, Bridgeport, Connecticut, 06606. Upon information and belief, Carm-Lor Entertainment, Inc. operates Mystique Bridgeport, which is located at 2458 Main St, Bridgeport, Connecticut 06606.

8. According to publicly available records, Defendant Mystique Holdings Stamford, LLC, is a limited liability company formed under the laws of the state of Connecticut, with its principal place of business located at 44 Popular St, Stamford, Connecticut, 06907. Upon information and belief, Mystique Holdings Stamford, LLC operates Mystique Stamford, which is located at 44 Popular St, Stamford, Connecticut 06907.

9. Venue is proper in the United States District Court for the District of Connecticut because Defendants' principal place of business is located in Bridgeport and Stamford, Connecticut, (Fairfield County).

10. A significant portion of the alleged causes of action arose and accrued in Bridgeport and Stamford, Connecticut, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Bridgeport and Stamford, Connecticut.

## PARTIES

*Plaintiffs*

11. Plaintiff Tiffany Keller ("Keller") is a well-known professional model, and a resident of Los Angeles County, California.

12. Plaintiff Amber Lancaster ("Lancaster") is a well-known professional model, and a resident of Los Angeles County, California.

13. Plaintiff Brooke Johnson a/k/a Brooke Taylor ("Taylor") is a well-known professional model, and a resident of Santa Barbara County, California.

14. Plaintiff Carrie Minter ("Minter") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

15. Defendant, Carm-Lor Entertainment, Inc., is a corporation formed under the laws of the state of Connecticut and registered to conduct business in Connecticut. During times relevant to this action, Carm-Lor Entertainment, Inc. operated Mystique Bridgeport.

16. Defendant, Mystique Holdings Stamford, LLC, is a limited liability company formed under the laws of the state of Connecticut and registered to conduct business in Connecticut. During times relevant to this action, Mystique Holdings Stamford, LLC operated Mystique Stamford.

17. Service of process may be perfected upon Defendant Carm-Lor Entertainment, Inc. by serving the registered agent for service of process, Green and Cross, P. C., who can be located at 1087 Broad Street STE 401, Bridgeport, CT 06604.

18. Service of process may be perfected upon Defendant Mystique Holdings Stamford, LLC by serving the registered agent for service of process, Green and Gross, P. C., who can be located at 1087 Broad Street STE 401, Bridgeport, CT 06604.

## FACTUAL ALLEGATIONS

19. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines, and individuals for the purpose of advertising products and services.

20. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

21. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

22. In the case of each Plaintiff, this apparent claim was false.

23. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

24. No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

25. Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

26. Keller is an American fashion model, Influencer, and world traveler. She has modeled for 10 years in 7 different countries and has traveled to over 25 countries. Keller has been featured in top magazines and on covers of Marie Claire, Maxim, Ocean Drive, and Le Fair to

name a few. She has walked the runways of New York, London, Sydney, and Miami fashion week. Keller has been featured on billboards for Resorts World Las Vegas, The Galleria Mall Dallas, I Saw It First, Body Glove, Benefit Cosmetics, Target, Crystals Mall Las Vegas, and Windsor. She has worked with many top brands such as Fashion Nova, Oh Polly, Guess, Revolve, Benefit Cosmetics, Tiger Mist, Boohoo, Jeffrey Star Cosmetics, among so many more. Some of Keller's hotel partners are Amilla Resort Maldives, Makanda Hotel Costa Rica, The Little Nell Aspen, Delano Miami, NoMad Las Vegas, Navutu Dreams Resort Cambodia, Anantara Phuket, and Five Palms Jumeriah Dubai. Keller has over 627,000 social media followers.[1]

27.    That we know of, Keller is depicted in the photo in Exhibit "A" to promote the Strip clubs on its Facebook page. This Image was intentionally altered to make it appear that Keller was either an employee working at the Strip clubs, that she endorsed the Strip clubs, or that she was otherwise associated or affiliated with the Strip clubs.

28.    Keller has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.    Lancaster joined The Price is Right in 2008. She was crowned Miss Washington Teen USA, and went to join the Sea Gals, the Seattle Seahawks famed cheerleading squad. Following five years on the squad, she moved to Los Angeles to pursue her entertainment career. In addition to her role on The Price is Right, Amber co-starred as Jenny Swanson on MTV's The Hard Times of RJ Berger. She has appeared on episodes of Days of Our Lives, CSI: Miami, The Bold and the Beautiful, Community, and Entourage. In addition, she has appeared as herself on Attack of the Show, The Scream Awards, and The Best Damn Sports Show Period. She also has appeared in the feature film Redline. Amber has been featured in numerous magazine spreads and

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

fashion features in Maxim, US Weekly, People, Stylewatch, Life & Style and Star. She has also been featured as part of Maxim's annual "Hot 100" list. She has 489,000 Instagram followers.

30. That we know of, Lancaster is depicted in the photo in Exhibit "B" to promote the Strip clubs on its Facebook page. This Image was intentionally altered to make it appear that Lancaster was either an employee working at the Strip clubs, that she endorsed the Strip clubs, or that she was otherwise associated or affiliated with the Strip clubs.

31. Lancaster has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32. Taylor Is a world-renowned model who has appeared in magazines such as FHM, Maxim, Viva Glam, and Stuff. She has also appeared in commercials for brands like Fredrick's of Hollywood, Coors Light, and Budweiser. In addition, Taylor has been featured in countless other catalogs, television commercials, and shows.

33. That we know of, Taylor is depicted in the photo in Exhibit "C" to promote the Strip clubs on its Instagram page. This Image was intentionally altered to make it appear that Taylor was either an employee working at the Strip clubs, that she endorsed the Strip clubs, or that she was otherwise associated or affiliated with the Strip clubs.

34. Taylor has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35. Minter is a model and actress who started modeling when she was 15 years old. She has modeled in runway looks for designers such as Valentino and Versace. Minter has appeared in many magazines, catalog covers, posters, billboards and ads for GQ, Maxim, Playboy, Seventeen, Gillette, Ferrari, JC Penny, Music Legs, Linder Sport/Sexy Shapewear, and many other brands and businesses. She has also been featured in several films, music videos, commercials,

and television series. Minter has her own business, Carries Pilates Plus, and it is known that she has the hottest studio in all of L.A. Minter has 431,000 followers on Instagram.

36.　　That we know of, Minter is depicted in the photo in Exhibit "D" to promote the Strip clubs on its Facebook page. This Image was intentionally altered to make it appear that Minter was either an employee working at the Strip clubs, that she endorsed the Strip clubs, or that she was otherwise associated or affiliated with the Strip clubs.

37.　　Minter has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

38.　　Defendants operate (or operated, during the relevant time period,) a Strip Club, where they are (or were) engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

39.　　Defendants own, operate, and control the Strip club's social media accounts, including its Facebook, Twitter, and Instagram accounts.

40.　　Defendants used the Strip clubs Facebook, Twitter, and Instagram accounts to promote the Strip clubs, and to attract patrons.

41.　　Defendants did this for their own commercial and financial benefit.

42.　　Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at the Strip Clubs, endorsed the Strip Clubs, or was otherwise associated or affiliated with the Strip Clubs.

43.　　Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed the Strip clubs to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising,

marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

44. Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by the Strip Clubs, and at no point have any of the Plaintiffs ever endorsed the Strip Clubs or otherwise been affiliated or associated with the Strip Clubs.

45. All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

46. Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

47. Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

48. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

49. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

50. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

51. Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed the Strip clubs.

52. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

53. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with the Strip Clubs.

54. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

55. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

56. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Strip Clubs website, Twitter, Facebook, or Instagram accounts.

57. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

58. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

59. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein.

60. Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishment, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' establishment, and thereby generate revenue for Defendants.

61. Thus, this was done in furtherance of Defendants' commercial benefit.

62. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact

demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

63. Both Plaintiffs and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

64. As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, which is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness.

65. Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendants' establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

66. Despite the fact that Defendants were at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishment.

67. Defendants knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendants' establishment.

68. Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

69. As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

70. Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

71. Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

72. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
### (Right of Privacy: Appropriation of Likeness)

73. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

74. As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Connecticut law.

75. Defendants have done so by appropriating each Plaintiffs' likeness for commercial purposes without authority or consent.

76. Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Defendant's website or related social media accounts as part of Defendants' advertising campaign.

77. At all relevant times, the Defendants' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

78. Defendants' website and social media accounts were designed to attract business to Defendants' business and generate revenue for Defendants.

79. Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

80. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

81. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

82. Upon information and belief, Defendants' use of Plaintiffs''s Images did in fact attract clientele and generate business for Defendants' establishment.

83. At no point did any Defendant ever receive permission or consent to use any Plaintiffs' Image on their website or social media account.

84. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Defendants' business.

85. At no point did Defendants ever compensate Plaintiffs for their use of their Images.

86. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

### THIRD CAUSE OF ACTION
### (Right of Privacy: False Light)

87. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

88. As set forth hereon, Defendants have violated each Plaintiffs' common law right to privacy under Connecticut law.

89. Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent and then portraying each Plaintiff in a false light in Defendants' advertisements.

90. Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

91. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

92. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

93. Specifically, Defendants invaded and violated Plaintiffs' privacy and portrayed them in a false light by creating the false impression with the consumers that Plaintiffs were either working at Defendants' establishment, endorsed same, were affiliated, associated, or otherwise connected with same, or had agreed to promote same.

94. Affiliation with Defendants' establishment could lead to significant potential career and personal damage to a professional model because it could lead other clients to refuse to work with them or drop them as a model.

95. At all relevant times, the Defendants' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

96. Defendants' website and social media accounts were designed to attract business to Defendants' business and generate revenue for Defendants.

97. Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for Defendants' establishment.

98. At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

99. Defendants were at all relevant times aware that they never received any Plaintiff's permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Defendants' business.

100. At no point did Defendants ever compensate Plaintiffs for its use of their Images.

101. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## **FOURTH CAUSE OF ACTION**
**(Connecticut Unfair Trade Practices Act, Conn. Gen. Stat.§ 42-110b)**

102. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

103. Defendants operated Defendants' website and social media accounts in order to promote Defendants' establishment, to attract clientele thereto, and to thereby generate revenue for Defendants.

104. As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Connecticut.

105. Defendants published Plaintiffs' Images on Defendants' website and social media accounts in order to create the false impression that Plaintiffs were either working at Defendants' business, endorsed Defendants' business, or were otherwise affiliated, associated, or connected with Defendants' business.

106. As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendants' business.

107. Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Connecticut law.

108. Defendants' advertising practices offends the public policy of Connecticut insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

109. Defendants' advertising practices are immoral, unethical, oppressive, and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are working at Defendants' establishment.

110. Defendants' advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are working at, endorse, or are otherwise affiliated with, Defendants' establishment.

111. There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants' own commercial interests.

112. As a result of Defendants'' unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiff s' reputations were injured, and each of the Plaintiffs' ability to market herself as a model was injured.

113. As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

114. As required by Conn. Gen. Stat. 42-110g(c), Plaintiffs have transmitted a copy of this Complaint to the Office of the Attorney General of the State of Connecticut.

## FIFTH CAUSE OF ACTION
**(Negligence and *Respondeat Superior*)**

115. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

116. Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

117. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

118. Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

119. Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

120. Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

121. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and Connecticut law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of their employees and agents.

122. Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

123. As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
**(Conversion)**

124. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

125. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

126. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for their own use and financial gain.

127. As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

128. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

129. As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Defendants' business to the general public and potential clientele.

130. Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either working at Defendants' business, or endorsed Defendants' business.

131. Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

132. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

133. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their establishment.

134. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

135. As such, Plaintiffs have been damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

136. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

137. Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

138. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

139. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work, endorse, or are otherwise affiliated with their business, Defendants have not compensated Plaintiff.

140. Plaintiffs are therefore entitled to reasonable compensation for Defendants' business unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Strip Clubs;

(c)  For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117;

(e)  For such other and further relief as the Court may deem just and proper.

THE PLAINTIFFS

By: */s/ Matthew C. Mason*
Matthew C. Mason (ct 15291)
GREGORY AND ADAMS, P.C.
190 Old Ridgefield Road
Wilton, CT 06897
(203) 762-9000
mmason@gregoryandadams.com

By: */s/ John V. Golaszewski*
John V. Golaszewski*
THE CASAS LAW FIRM, P.C.
1740 Broadway, 15th Fl.
New York, New York 10019
T: 855.267.4457
F: 855.220.9626
Attorneys for Plaintiffs

**Pro Hac Vice Application Forthcoming*